IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MARIA SFANOS,<br><br>   Plaintiff,<br><br>  v.<br><br>CRANBERRY CROSSROADS<br>DINING VENTURE, LLC d/b/a<br>Juniper Grill,<br><br>   Defendant. | 2:23-CV-1502 |

## OPINION

### J. Nicholas Ranjan, United States District Judge

Plaintiff Maria Sfanos alleges that her former employer, Defendant Cranberry Crossroads Dining Venture, LLC d/b/a Juniper Grill (Cranberry Crossroads), discriminated against her because of her sex and age. Ms. Sfanos brings claims for a hostile work environment based on sex in violation of Title VII of the Civil Rights Act (Title VII) (Count I), retaliation in violation of Title VII (Count II), and a hostile work environment based on age in violation of the Age Discrimination in Employment Act (ADEA) (Count III). Cranberry Crossroads has moved to dismiss these claims. For the reasons below, the Court will **DENY** the motion.

### BACKGROUND

Ms. Sfanos began working as a server at the Juniper Grill in January 2023, when she was 50 years old. ECF 9, ¶¶ 5, 22. She was fired a month later. *Id.* ¶¶ 18, 21. This brief period of employment was allegedly marked by "pervasive and regular" discriminatory behavior because of Ms. Sfanos's age and sex. *Id.* ¶¶ 6, 26, 42.

Ms. Sfanos's complaint centers on the actions of three people: Nick Fearon, Juniper Grill's Duty Manager; Chris Perrin, Juniper Grill's Executive Chef/Manager; and Travis Smith, one of the restaurant's cooks. She alleges generally that Messrs. Fearon and Perrin "made repeated comments to [her] about her age." *Id.* ¶ 7. She

claims that "[o]n multiple occasions," Messrs. Fearon and Perrin referred to her as "memaw," a nickname for a grandmother. *Id.* ¶ 8. Ms. Sfanos also alleges that Messrs. Fearon and Perrin "repeatedly" told her to "hurry up" when they were walking behind her, implying that Ms. Sfanos moved slowly because of her age. *Id.* ¶ 9. Although it's not entirely clear, it appears that they made jokes about her age during these instances, as well. *Id.*

As for Mr. Smith, Ms. Sfanos alleges that he "made repeated comments to [Ms. Sfanos] about her physical appearance and looks." *Id.* ¶ 10. He "repeatedly commented" on her hair and told her things like "you look good" and "look at those eyes." *Id.* ¶ 11. He also made inappropriate comments about oral sex when customers would order hot dogs. *Id.* ¶ 12. Ms. Sfanos claims that management witnessed these comments, but doesn't allege that any manager or supervisor took any action in response. *Id.* ¶ 13.

That's not all of Mr. Smith's bad behavior. Ms. Sfanos alleges that he once rubbed her back, without her consent, in front of Mr. Perrin. *Id.* ¶ 14. Ms. Sfanos told Mr. Smith to stop, which elicited a comment from Mr. Smith to Mr. Perrin that Mr. Smith couldn't help himself because Ms. Sfanos was "so soft[.]" *Id.* ¶ 16. Rather than tell Mr. Smith to stop, Mr. Perrin made an ageist comment and said Ms. Sfanos was "too old to be soft." *Id.* ¶ 17.

The inappropriate behavior culminated on February 18, 2023. On that day, "Mr. Smith approached [Ms. Sfanos] from behind, making a sexual humping [gesture] and using a plastic container he was holding to push into [Ms. Sfanos's] backside aggressively[.]" *Id.* ¶ 18. Ms. Sfanos responded by threatening to punch him if he touched her again. *Id.* ¶ 20. David McClendon, the restaurant's General Manager, witnessed this incident. *Id.* ¶ 19. But rather than intervene on Ms. Sfanos's behalf, about 15 minutes later, he fired her, telling her the job "isn't working" and that Ms. Sfanos "seemed stressed." *Id.* ¶ 21.

From these allegations, Ms. Sfanos filed a three-count complaint, asserting claims for Title VII hostile work environment, Title VII retaliation, and ADEA hostile work environment. ECF 1. After Cranberry Crossroads moved to dismiss Ms. Sfanos's claims, Ms. Sfanos amended her complaint by adding a few new allegations. ECF 9. In response, Cranberry Crossroads once again moved to dismiss. ECF 10. That renewed motion is fully briefed and ready for disposition.

## DISCUSSION AND ANALYSIS[1]

**I.   Ms. Sfanos plausibly alleges her hostile work environment claims.**

Ms. Sfanos brings two types of hostile work environment claims: one based on her sex, and the other based on her age. To establish either, Ms. Sfanos must plead facts that show—or raise the "reasonable expectation" that discovery will reveal facts that show, *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (cleaned up)—that (1) she "suffered intentional discrimination"; (2) "the discrimination was severe or pervasive"; (3) "the discrimination detrimentally affected [her]"; (4) "the discrimination would detrimentally affect a reasonable person in like circumstances"; and (5) "the existence of *respondeat superior* liability." *Minarsky v. Susquehanna Cnty.*, 895 F.3d 303, 310 (3d Cir. 2018) (cleaned up).[2] This is a "demanding" standard.

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Any reasonable inferences should be considered in the light most favorable to the plaintiff. *Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

[2] The Third Circuit hasn't "formally recognized a cause of action for hostile work environment under the ADEA." *Lyles v. Phila. Gas Works*, 151 F. App'x 169, 171 n.3 (3d Cir. 2005). But it has "assume[d], without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim." *Slater v. Susquehanna Cnty.*, 465 F. App'x 132, 138 (3d Cir. 2012).

*Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious)" aren't enough. *Id.* (cleaned up).

In determining whether Ms. Sfanos has met her burden, the Court considers the totality of the circumstances. That includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 95 (3d Cir. 2020) (cleaned up).[3] This analysis is informed by "[c]ommon sense, and an appropriate sensitivity to social context[.]" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998).

Cranberry Crossroads argues that both hostile work environment claims should be dismissed because Ms. Sfanos "has not alleged severe and pervasive conduct[.]"[4] ECF 11, p. 1. The Court disagrees.

"In the Third Circuit, the plaintiff must satisfy a 'high' threshold to satisfy the 'severe or pervasive' element." *Wright v. Providence Care Ctr., LLC*, No. 17-00747, 2019 WL 4643592, at *11 (W.D. Pa. Sept. 24, 2019) (Ranjan, J.) (citation omitted), *aff'd*, 822 F. App'x 85 (3d Cir. 2020). The standard "requires conduct that is sufficient to alter the conditions of the employee's employment and create an abusive working environment." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 214 (3d Cir. 2017) (cleaned up).

---

[3] *Wright* concerns an ADA hostile work environment claim, but the standard generally applies. *Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 152 n.20 (3d Cir. 2017).

[4] To be clear, "[t]he correct standard is 'severe *or* pervasive[,]'" not severe *and* pervasive. *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (emphasis added).

Despite this high burden, courts have "shown a reluctance to dismiss a complaint at the motion to dismiss stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive." *Moore v. Lower Frederick Twp.*, No. 20-5920, 2022 WL 657068, at *11 (E.D. Pa. Mar. 4, 2022) (cleaned up); *see also Fedder v. Bloomsburg Univ. of Pennsylvania*, No. 23-01678, 2024 WL 580552, at *3 n.36 (M.D. Pa. Feb. 13, 2024) (collecting cases). Of course, that doesn't mean a hostile work environment claim survives an early challenge as a matter of right. But, as discussed below, Ms. Sfanos has "allege[d] enough facts to raise a reasonable expectation that discovery will reveal evidence of [her claims,]" *Martinez*, 986 F.3d at 266 (cleaned up), and so her claims will survive.

### A. Ms. Sfanos plausibly alleges her sex-related hostile work environment claim.

Most of Ms. Sfanos's sex-related allegations amount to inappropriate comments of a sexual nature or about her appearance. For instance, she alleges that Mr. Smith "repeatedly said things like 'you look good' or 'look at those eyes[,]'" and that he made sexually charged comments when customers or employees ordered hot dogs. ECF 9, ¶¶ 11-12. Standing alone, those are not the kind of comments so severe that they "create[] an attitude of prejudice that injects hostility and abuse into the working environment[,]" so as to "alter [Ms. Sfanos's] working conditions." *Qin v. Vertex, Inc.*, 100 F.4th 458, 471 (3d Cir. 2024) (cleaned up).

But Ms. Sfanos's allegations aren't limited to inappropriate comments. Mr. Smith also rubbed her back while making comments about her appearance, and when Ms. Sfanos's objected, he told her she was "so soft, he [couldn't] help himself." ECF 9, ¶¶ 14-16. And, perhaps more egregiously, he made a "humping [gesture]" while shoving a plastic container into Ms. Sfanos's backside. *Id.* ¶ 18. This behavior was upsetting enough that Ms. Sfanos threatened to punch Mr. Smith if he touched her

again. *Id.* ¶ 20. All these actions occurred over a relatively short time, which is also an indicator of the severity or pervasiveness of the conduct. Altogether, the allegations plausibly demonstrate either severe or pervasive conduct that state a claim.

The Court thus denies Cranberry Crossroads's motion to dismiss Ms. Sfanos's sex-related hostile work environment claim.

### B. Ms. Sfanos plausibly alleges her age-related hostile work environment claim.

Ms. Sfanos's age-specific allegations are thinner, but they too are enough for now. Ms. Sfanos alleges that managers made "repeated comments" about her age, "[o]n multiple occasions" called her "memaw," "repeatedly" told her to "hurry up[,]" might have made additional jokes when they told her to "hurry up[,]" and, in one instance, that Mr. Perrin made an ageist comment and said she was "too old to be soft." ECF 9, ¶¶ 7-9, 17.

"[S]imple teasing" or "offhand comments," like the behavior alleged here, are "inadequate" to qualify as "severe or pervasive[.]" *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (cleaned up) (quoting *Faragher*, 524 U.S. at 788); *see also Qin*, 100 F.4th at 471 (severity involves "look[ing] to whether the conduct creates an attitude of prejudice that injects hostility and abuse into the working environment" (cleaned up)). And nothing suggests that these comments, collectively, were "physically threatening or humiliating," or that they "unreasonably interfere[d] with [Ms. Sfanos's] work performance." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013). So without more, Ms. Sfanos hasn't alleged "severe" conduct. *See Whitesell v. Dobson Commc'n*, 353 F. App'x 715, 717 (3d Cir. 2009) (comments that plaintiff "need[ed] glasses[,]" was "asked whether she remembered older

television shows or movies[,]" and that she was told "come on, old lady, keep up" when walking not severe).[5]

That doesn't end the analysis, however. "[L]ess objectionable[] conduct" can "contaminate the workplace" and sustain a hostile work environment claim "if it is pervasive." *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (cleaned up); *see also Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) ("Less severe isolated incidents which would not themselves rise to the level of discrimination may, when taken together as part of the overall scenario, evidence discriminatory animus[.]" (cleaned up)).

As Ms. Sfanos notes, her amended complaint includes allegations of frequency ("repeated comments[,]" and comments made "[o]n multiple occasions"). ECF 9, ¶¶ 7-8. Given these allegations, it is plausible—particularly considering the brief period of her employment—that Cranberry Crossroads's employees subjected Ms. Sfanos to relatively innocuous comments so often that they "altered [her] working environment." *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 182 (3d Cir. 2020). Ms. Sfanos may not ultimately succeed on this theory, but "[w]hether these allegations are true and whether they amount to 'pervasiveness' are questions to be answered after discovery[.]" *Castleberry*, 863 F.3d at 266 (allegations that "'on several occasions' . . . sign-in sheets bore racially discriminatory comments and that [the plaintiffs] were required to do menial tasks while their white colleagues [weren't]" plausibly alleged pervasive conduct).

The Court therefore denies Cranberry Crossroads's motion to dismiss Ms. Sfanos's age-related hostile work environment claim.

---

[5] *Whitesell* was on summary judgment, but it is instructive given the comments are like those alleged in Ms. Sfanos's amended complaint.

## II. Ms. Sfanos plausibly alleges a Title VII retaliation claim.

Ms. Sfanos's Title VII retaliation claim also survives. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (cleaned up).

Cranberry Crossroads argues that Ms. Sfanos fails to plead that she engaged in a protected activity, and that there was no causal nexus between her activity and her termination. The Court disagrees.

### A. Ms. Sfanos plausibly alleges that she engaged in a protected activity.

Cranberry Crossroads contends that Ms. Sfanos didn't engage in a protected activity because she never opposed any discriminatory behavior. It asserts that the only alleged oppositional activity, Ms. Sfanos threatening to punch Mr. Smith in front of Mr. McClendon, doesn't cut it, because it wasn't "sufficiently oppositional" and was "unreasonably hostile and disruptive to the workplace." ECF 11, p. 9. The Court disagrees, for at least three reasons.

First, Ms. Sfanos's threat to punch Mr. Smith suffices here. As to being plausibly "oppositional," it's the message, not the conduct, that counts. Protected activity can include "informal protests of discriminatory employment practices, [such as] making complaints to management[.]" *Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (cleaned up). "[C]omplaints must be specific enough to notify management of the particular type of discrimination at issue in order to constitute protected activity[.]" *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 288 (3d Cir. 2010) (cleaned up); *see also Curay-Cramer*,

-8-

450 F.3d at 135 ("A general complaint of unfair treatment is insufficient to establish protected activity[.]"). That said, the Court "look[s] to the message . . . conveyed by a plaintiff's conduct rather than the means of conveyance." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (cleaned up).

The message Ms. Sfanos conveyed is clear. She told Mr. Smith—who was assaulting her—to stop, or she would hit him. Mr. McClendon, the manager who fired her, personally observed the interaction. These facts plausibly allege protected activity. *See Curay-Cramer*, 450 F.3d at 135-36 ("[O]pposition to an illegal employment practice [may] identify the employer and the practice . . . by context."); *Bonson v. Hanover Foods Corp.*, 451 F. Supp. 3d 345, 357 (M.D. Pa. 2020) (plaintiff telling harasser, who was herself in management, to stop harassing him sufficient to survive summary judgment).

Second, as for the threatening conduct of Ms. Sfanos's message, that is not disqualifying here. Cranberry Crossroads, relying primarily on a 2008 decision from Judge Gibson of this Court, argues that "the protections of Title VII [are limited to] employee behavior that is reasonable, as determined by balancing the interests of the employee in opposing unlawful discrimination with those of the employer in maintaining a productive workplace." *Sampath v. Concurrent Techs. Corp.*, No. 03-264, 2008 WL 868215, at *44 (W.D. Pa. Mar. 31, 2008) (Gibson, J.), *aff'd*, 299 F. App'x 143 (3d Cir. 2008); ECF 11, p. 8. As such, Cranberry Crossroads argues that the threat to punch a co-worker is so disruptive to the workplace that it cannot support a claim for retaliation.

But whether this threat was disruptive is very fact-driven and context-specific, and so it cannot be decided in the absence of a more thorough record. Indeed, courts that have considered this issue have required a balancing test, which requires a host of factual considerations. *See, e.g.*, *Jones v. Flagship Intern.*, 793 F.2d 714, 728 (5th Cir. 1986). Moreover, while some courts have considered this issue in the context of

a plaintiff's *prima facie* burden, others have viewed it as more of a defense—and the Court here finds that this type of argument is more appropriate to consider as a defense, such as in the context of legitimate nondiscriminatory reasons for termination. *See Matima v. Celli*, 228 F.3d 68, 79-80 (2d Cir. 2000) (discussing how courts analyze the issue differently). As this goes to a defense, some discovery is needed before the Court can address the issue.[6]

Third, the "threat" comment wasn't the only opposition pled. The amended complaint also pleads that Ms. Sfanos told Mr. Smith to stop touching her the first time he engaged in unwelcome rubbing of her back, and did so in front of one of Cranberry Crossroads's managers. ECF 9, ¶¶ 14-17. These facts and the reasonable inferences plausibly allege an informal complaint to management, as they did with respect to the February 18, 2023, incident.

In short, Ms. Sfanos has plausibly pled at least two instances of oppositional protected activity, and issues pertaining to the "punch" comment need to be developed in discovery and, if raised, must be raised as part of Cranberry Crossroads's defenses.

### B. Ms. Sfanos plausibly alleges that Cranberry Crossroads terminated her because of her protected activity.

Ms. Sfanos also alleges causation, at least with respect to the February 18, 2023, incident. A "broad array of evidence" can establish a causal link, such as a "temporal proximity unusually suggestive of retaliatory motive," evidence of "a pattern of antagonism," or where the evidence "as a whole" raises the necessary

---

[6] The idea of certain oppositional conduct being so unreasonable as to not be protected activity isn't found in any precedential Third Circuit decision. It also doesn't appear in any recent decisions (*i.e.*, in the last 15 years or so) from any court, either. So the Court has some doubts as to the continuing viability of *Sampath* and the cases on which it relies. This is particularly so because the Third Circuit appears to have taken a broader view of oppositional protected activity in Title VII cases. *See, e.g.*, *Kengerski v. Harper*, 6 F.4th 531, 538 (3d Cir. 2021) (recognizing for the first time associational opposition as protected activity).

inference. *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017) (cleaned up).

Cranberry Crossroads doesn't appear to dispute that there is sufficient temporal proximity between the February 18, 2023, incident, and Ms. Sfanos's termination, and rightly so.  Ms. Sfanos alleges that Mr. McClendon fired her ten to fifteen minutes after the incident and her telling Mr. Smith to stop.  That's well within the temporal proximity cutoff.  *See Albertini v. Aesthetic Physicians, P.C.*, No. 20-5765, 2021 WL 5769537, at *9 (E.D. Pa. Dec. 6, 2021) ("[W]e cannot imagine that the passage of 30 minutes would not satisfy the Third Circuit's requirement[.]").  The temporal proximity, alone, is sufficient to plausibly plead a causal link.  *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007).[7]

The Court thus denies Cranberry Crossroads' motion to dismiss Ms. Sfanos's retaliation claim.

## CONCLUSION

For the above reasons, the Court will **DENY** Cranberry Crossroads's motion to dismiss.  An appropriate order follows.

Date: November 19, 2024                                  BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge

---

[7] Cranberry Crossroads's remaining arguments as to causation go to questions of credibility and pretext, and so are not appropriately considered at this juncture.